GLADYS M. RAWDING, *Admx. vs.* THE LONSDALE BAKERY COMPANY.

SAME *vs.* JOSEPH McDONALD.

APRIL 9, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These are two actions of trespass on the case for negligence, under general laws 1938, chapter 477, §1, to recover damages for the death of plaintiff's husband, Burton R. Rawding, alleged to have been caused by the wrongful act of the defendants. In both cases, which were tried together to a jury, the plaintiff was nonsuited and she has duly prosecuted her bill of exceptions to this court to have that ruling reviewed. Since the issue is the same in both cases, we will treat them as if only one case were before us, our decision however applying with equal force in each case.

The accident happened on Pawtucket avenue in the town of East Providence, shortly after 7 a. m. on July 11, 1942. It was drizzling and the road was wet. There is no evidence that Pawtucket avenue was closely built up at the place of the accident. It is a four-lane cement or concrete highway, each lane being about 10 feet wide, and runs approximately north and south. It is practically straight for some considerable distance each way from the scene of the accident. There is a curbing, some 10 or 11 inches high along the westerly

edge of the westerly lane for southbound traffic, and beyond this curbing there is an open space which extends some 15 feet further to the west. Two streets, Catlin avenue and Don avenue, run into but do not cross Pawtucket avenue on the west, while Weeden Lane runs into it in a like manner on the east. The accident happened about midway between these two streets, and some 10 or 20 feet south of Weeden Lane.

McDonald was driving a two-ton truck, which was loaded with products of the Lonsdale Bakery Company, south on Pawtucket avenue towards Bristol, where he was to deliver the merchandise. Rawding, the deceased, worked nights in Providence. He was driving his automobile, in which one Chamberlain was a passenger, north on Pawtucket avenue and was on his way to his home in Medfield, Massachusetts. Chamberlain was asleep when the accident happened and Rawding died shortly thereafter.

In this situation the plaintiff, availing herself of the provisions of P. L. 1939, chap. 705, which, generally speaking, permits a party to cross-examine an adverse witness without being concluded or bound by such examination or by any answer made by the witness, called McDonald as her only witness on the issue of liability. No questions were asked him by counsel for the defense.

McDonald testified that there is a traffic light at a peculiar intersection of highways some 425 feet north of the place of the accident; that, on approaching this intersection, he slowed his speed from 30 to 15 miles an hour and crossed the intersection at the latter rate of speed, as the light was in his favor; and that he then gradually increased his speed and continued to drive south on Pawtucket avenue, with the truck completely in the extreme westerly lane for southbound traffic.

While driving in this position he saw an automobile, traveling north, about 400 feet away. There being no other traffic on the highway in that vicinity at that time, he later noticed that the automobile was straddling the two easterly

lanes for northbound traffic and that, as it drew closer, it seemed "to edge towards the center of the road." The truck was then moving at a speed of between 25 to 30 miles an hour.

McDonald further testified that, when the two vehicles were about 50 feet apart, it appeared to him that the autobile was about to cross the center line of the highway onto the inner lane for southbound traffic; that he then took his foot off the accelerator of the truck and put it on the brake; that, when the automobile actually started to cross that line, he applied the brake and drove the truck "as close to the right, to the curbing, as possible", bringing it to a full stop within 30 feet; and that the automobile, moving "diagonally" or in a northwesterly direction across the highway, struck the truck, which was then either fully stopped or barely moving on the extreme westerly portion of the westerly lane for southbound traffic. There is no testimony from this witness respecting the speed of the automobile, since no question as to its speed was asked him.

A police officer, who arrived on the scene shortly after the accident, testified that the truck was then on the westerly side of the highway in its extreme right lane, "up against the curb" and headed directly south. The automobile, which was "on the westerly side of the road also", was at an angle, facing west, with its "front in contact with the left front of the Lonsdale truck." The radiator and the right front wheel of the automobile were damaged. There is no testimony respecting the damage to the truck.

In this state of facts the plaintiff, relying on *Silvia* v. *Caizzi*, 63 R. I. 172, contends that, since Rawding died almost immediately after the accident, there is a presumption that at the time of the accident he was in the exercise of due care. This contention is clearly unsound as the situation in the *Silvia* case was entirely different. There the deceased was found dead on the highway and there was no witness to the accident. The rule of law that raises the presumption under consideration cannot be invoked in the instant case, for here

there is credible and uncontradicted evidence as to the manner in which the automobile was operated by the deceased when the accident happened. At page 179 of the opinion in the *Silvia* case, we say that "such a presumption can continue only while there is no credible evidence of the fact. It ceases to be of force against competent evidence showing want of due care."

There is no conflicting evidence in this case as to the due care of the deceased or the defendant's negligence. Furthermore, McDonald's testimony is not contradictory or inherently improbable. His testimony is clear and unimpeached. When all the uncontradicted evidence is taken into consideration, it presents the picture of Rawding's automobile gradually edging towards the center of the highway and, when the two vehicles were only about 50 feet apart, crossing the middle line of the highway and cutting across the path of the defendant's truck, which was then traveling on its own extreme right or westerly half of the highway in the manner and at the place hereinbefore described.

Until it became reasonably apparent that the automobile was going to cross the center line of the highway, the defendant had the right to assume that its driver would observe the rules of the road and that he would not act in disregard of his own safety and the safety of others by cutting across the path of the truck, which was in plain view and but a relatively short distance away. No left turn from one highway to another, or to any driveway, public or private, is involved in this case. The only movement by the automobile that can be construed as a left turn was when, without reasonably apparent cause, it proceeded across the center line of Pawtucket avenue onto its inner lane for southbound traffic.

The plaintiff contends that it was a question for the jury to determine whether McDonald should have put on his brakes sooner than he did and, more particularly, whether, when the automobile was about 50 feet from the truck, he should have turned either to his left and driven the truck across the two lanes for northbound traffic into Weeden

Lane, which is on the easterly side of the highway and some 10 or 20 feet north of the place of the accident, or should have turned to his right and, jumping the curbing on the westerly side of the highway, should have driven the truck onto the open ground beyond that curbing. The case of *Norton* v. *Carty,* 127 A. (R. I.) 567, which the plaintiff cites to us on this point, is entirely different from the case at bar. The law that controlled that decision is clearly inapplicable here. In our opinion, the only conclusion warranted by the evidence in this case is that McDonald, who was under no duty to take either of the courses suggested by the plaintiff, was not negligent. We find no merit in these contentions.

A careful examination of the uncontradicted and unimpeached evidence in this case clearly shows that, all things considered in a light most favorable to the plaintiff, it was not error to grant defendant's motion for a nonsuit.

Plaintiff's exception in each case is overruled, and each case is remitted to the superior court for entry of judgment on the nonsuit.

*Francis V. Reynolds,* for plaintiff.

*Frederick W. O'Connell, Swan, Keeney & Smith,* for defendants.